# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**JEFFREY D. HOUSE,**

              **Plaintiff,**

      v.                                            Case No. 22-CV-911

**CRAIG J. KLEPEL, et al.,**

              **Defendants.**

---

## ORDER

---

*Pro se* plaintiff Jeffrey D. House brings this lawsuit under 42 U.S.C. § 1983 against five members of the Racine Police Department: defendants Craig J. Klepel, Robert L. Rasmussen, II, Steven W. Beal, Theodore J. Bodnar, and Matthew W. Johnson. House alleges violations of his First, Fourth, and Eighth Amendment rights occurring during an investigation at his home on September 14, 2019. On February 1, 2023, the court screened House's amended complaint and allowed him to proceed. (ECF No. 32 at 4.)

The parties have filed cross-motions for summary judgment. (ECF Nos. 55, 59.) This order resolves their motions. The parties have consented to the jurisdiction of a magistrate judge. (ECF Nos. 4, 13, 15, 17, 36, and 37.)

1. **Preliminary Matters**

In their reply brief defendants contend that House failed to follow Rule 56 of the Federal Rules of Civil Procedure and Civil Local Rule 56 in his response to their motion for summary judgment. (ECF No. 67 at 3.) Specifically, the defendants argue that House's responses to their proposed findings of fact fail to cite to evidence in the record that supports his disagreement with their proposed facts. (*Id.*) Therefore, they argue, the court must accept their proposed facts as uncontested. (*Id.*)

District courts are entitled to construe pro se submissions leniently and may overlook the plaintiff's noncompliance by construing the limited evidence in the light most favorable to the plaintiff. *See Grady v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016). While House's response materials do not formally comply with the rules, his response contains sufficient facts to allow the court to rule on the parties' motions for summary judgment. House invokes 28 U.S.C. § 1746 in his complaint, which is enough to convert the complaint into an affidavit for purposes of summary judgment. *See Beal v. Beller*, 847 F.3d 897, 901 (7th Cir. 2017) (quoting *Ford v. Wilson*, 90 F.3d 245, 246 (7th Cir. 1996) (" [A] verified complaint is not just a pleading; it is also the equivalent of an affidavit for purposes of summary judgment, because it 'contains factual allegations that if included in an affidavit or deposition would be considered evidence, and not merely assertion.' "). As such, the court will consider the information contained in House's submissions where appropriate in deciding the cross-motions for summary judgment.

2. Facts

On September 10, 2019, Plaintiff Jeffrey House, proceeding *pro se* in a different action, filed a complaint against various employees of the Racine Police Department for their roles in an April 2017 search of his home. (ECF No. 29 at 3.) That case was dismissed in *House v. Groth, et. al.*, No. 19-cv-1307, 2022 WL 3100763, at *1 (E.D. Wis. Aug. 4, 2022).

Separately, on August 22, 2019, House and his girlfriend, Alexus Marie Moralez, reported a battery at their residence located at 1030 Hilker Place, Racine, Wisconsin. (ECF No. 59-3 at 2, ¶ 9.) On September 14, 2019—four days after House filed his complaint in *House v. Groth*—Defendant Klepel, who had been assigned to investigate the battery, went to 1030 Hilker Place to speak with House and Moralez as part of that investigation. (*Id.*, ¶ 10, ¶ 12.)

When Klepel arrived he knocked on the door but did not receive a response. (ECF No. 59-3 at 3, ¶ 13.) He left his business card in the door and left. (*Id.*) Klepel was subsequently told that Moralez wanted to speak with him regarding the incident, so he returned to 1030 Hilker Place. (*Id.*, ¶ 14.) Although Moralez denies that she requested to speak with Klepel (ECF No. 65-1), House does not dispute (and offers no evidence to dispute) that Klepel was told Moralez wanted to speak with him.

Upon returning to the home Klepel again knocked on the door and, again receiving no response, returned to his squad car and waited. (ECF No. 59-3 at 3., ¶¶ 15-

16.) After some time a woman who later identified herself as Julie Vargas exited the home and spoke with Klepel. (*Id.*, ¶ 17.) Vargas initially gave Klepel a fake name and would not provide her date of birth. (*Id.*, ¶ 18.) Vargas told Klepel that neither House nor Moralez were inside but that her husband, Joshua Hernandez, was inside and would speak with him. (*Id.*, ¶¶ 20-21.) Vargas went back inside the home to get Hernandez, but neither of them came back outside. (*Id.*, ¶ 21.)

Suspicious as to what was going on, Klepel requested cover squads to his location. (ECF No. 59-3 at 3, ¶ 22; ECF No. 58-4 at 3, ¶ 23.) Defendants Bodnar and Rasmussen soon arrived at the home. (ECF No. 59-3 at 3, ¶ 23.) Shortly after they arrived, Rasmussen noticed an individual open a side door of the home as if to leave and then, upon seeing the police, went back inside. (*Id.* at 4, ¶ 24.) When Rasmussen told Klepel about the individual at the side door, Klepel requested additional cover squads to his location. (*Id.*, ¶ 25; ECF No. 58-4 at 3, ¶ 25.)

When additional officers arrived, Rasmussen repeatedly knocked on the front door until Vargas, Hernandez, Moralez, and Moralez's infant child came to the door. (ECF No. 59-3 at 4, ¶¶ 26-27.) Klepel smelled the odor of marijuana and ordered them to step out onto the sidewalk. (*Id.*, ¶ 28-29.) Klepel asked them if anyone else was inside. (*Id.*, ¶ 29.) They repeatedly told Klepel that no one else was inside besides Moralez's eight-month-old baby. (*Id.*, ¶ 30; ECF No. 58-2 at 2, ¶ 7, Ex. 1 2:44-4:37.) Rasmussen told

Klepel that the individual he had seen at the side door was not among any of the persons who had come outside. (*Id.*, ¶ 34; ECF No. 58-3 at 2, ¶ 16.)

Moralez was allowed to go inside the home to bring her baby outside. (ECF No. 58-2 at 2, ¶ 7, Ex. 1 5:39.) When Moralez returned to the sidewalk, Klepel yelled into the home, ordering anyone inside to identify themselves. (ECF No. 59-3 at 5, ¶ 32.) Based on Rasmussen's observation of another person entering the side door of the home, coupled with the statements made by Vargas, Hernandez, and Moralez, Klepel believed that an unauthorized individual was hiding inside. (*Id.*, ¶ 33.)

Defendant Beal and his police dog entered the home to locate the unknown individual, with Beal directing his police dog to the basement. (ECF No. 59-3 at 5, ¶¶ 35-36). The dog alerted to House's location in the basement, at which point Klepel, Beal, and Johnson told House to come outside. (*Id.*, ¶ 37.) The police dog did not make physical contact with House, nor did any officer use force on him. (*Id.*, ¶¶ 38-39.)

House was handcuffed (ECF No. 58-2 at 2, ¶ 8, Ex. 2 0:38) and put in the back of a police van while the defendants investigated whether he was authorized to be in the home (ECF No. 59-3 at 6, ¶ 40). Once the defendants ascertained House's identity and determined that he was authorized to be in the home, they decided to release him. (ECF No. 59-3 at 6, ¶ 41.) At the same time, House told the officers that he was having trouble breathing and having chest pain and asked to be taken to the hospital. (*Id.*, ¶ 42; ECF

No. 58-2, ¶ 8, Ex. 2 at 3:07, 3:26.) House was taken to the hospital. (ECF No. 59-3 at 6, ¶ 43.)

House asserts that he remained handcuffed during his transportation to the hospital and while he was in the emergency room. (ECF No. 61 at 4.) During House's evaluation at the hospital, Klepel told him that he would not be charged with anything, would not be taken into custody, and was not under arrest. (ECF No. 59-3 at 6, ¶ 43.)

### 3. Summary Judgment Standard

The court shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a motion for summary judgment the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Celotex Corp.*, 477 U.S. at 324. Evidence relied upon must be of a type that would be

admissible at trial. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). To survive summary judgment a party cannot just rely on his pleadings but "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. "In short, 'summary judgment is appropriate if, on the record as a whole, a rational trier of fact could not find for the non-moving party.'" *Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) (citing *Turner v. J.V.D.B. & Assoc., Inc.*, 330 F.3d 991, 995 (7th Cir. 2003)).

4. Analysis

   a. **First Amendment Retaliation Claim**

House alleges that the defendants violated his First Amendment rights by searching his home and arresting him in retaliation for filing a lawsuit against other members of the Racine Police Department four days prior. (ECF No. 55 at 3.) To establish a prima facie case of First Amendment retaliation, House must show "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was 'at least a motivating factor' in the defendants' decision to take retaliatory action." *Woodruff v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008).

The parties' arguments focus mainly on the third element, so that is where the court will focus its discussion. In arguing that the defendants' actions were retaliatory, House emphasizes the temporal proximity between the filing of his prior lawsuit and

the defendants' actions at issue in this case, claiming that the timing between the two is evidence of the defendants' retaliatory motive. (ECF No. 55 at 3.) The defendants respond that House cannot show that his First Amendment activity was a motivating factor in their actions because they did not know about his prior lawsuit at the time they went to his home. (ECF No. 59-1 at 14; ECF No. 67 at 9.)

A plaintiff may introduce direct or circumstantial evidence to show that protected conduct was a motivating factor in the defendants' alleged retaliatory action. *FKFJ, Inc. v. Vill. of Worth*, 11 F.4th 574, 586 (7th Cir. 2021). "To establish causation through circumstantial evidence, a plaintiff may present evidence of 'suspicious timing, ambiguous oral or written statements, or behavior towards or comments directed'" towards plaintiff indicating animus against him. *Id.* (internal citation omitted).

Suspicious timing on its own, however, is typically "not enough to get past a motion for summary judgment." *Kidwell v. Eisenhauer*, 679 F.3d 957, 966 (7th Cir. 2012) (quoting *Loudermilk v. Best Pallet Co.*, 636 F.3d 312, 315 (7th Cir. 2011)). For a suspicious-timing argument to create an inference of causation, the plaintiff must demonstrate that an adverse action "follows close on the heels of protected expression, and the plaintiff [must] show that the person who decided to impose the adverse action knew of the protected conduct." *Kidwell*, 679 F.3d at 966 (quoting *Lalvani v. Cook Cnty., Illinois*, 269 F.3d 785, 790 (7th Cir. 2001)). For an adverse action to follow "close on the heels" of a protected activity, the time between the two must be close—typically, a few days. *Id.*

Here, while the four-day period between House filing his lawsuit in *House v. Groth* and the defendants' actions could be circumstantial evidence of causation, to survive summary judgment House must show that the defendants knew about that lawsuit. House repeatedly asserts that the defendants had a retaliatory motive, but he does not refer to anything in the record suggesting that they knew about his lawsuit.

Moreover, the defendants point out that they could not have been aware of the lawsuit when they interacted with House on September 14, 2019. The defendants explain that, although House filed a complaint on September 10, 2019 (four days before the allegedly retaliatory search and arrest), the defendants in that case were not served with a summons until two months later. (ECF No. 59-1 at 14); Docket at 5, *House v. Groth*, No. 19-cv-1307 (E.D. Wis. Sept. 10, 2019). As such, on the date of the allegedly retaliatory search and arrest, no officer for the City of Racine had notice of House's lawsuit.

To counter this, House needs to point to evidence in the record showing that the defendants in *this* case were aware of the lawsuit that House had filed against a different set of defendants who had not even been served with the complaint. House points to no such evidence. Instead, he responds that it is more likely than not that the defendants had a retaliatory motive because they "acted similarly toward" House in the past. (ECF No. 62 at 5.) This argument is pure speculation, which is not enough to withstand summary judgment. *See Amadio v. Ford Motor Co.*, 238 F.3d 919, 927 (7th Cir.

9
Case 2:22-cv-00911-WED   Filed 09/28/23   Page 9 of 20   Document 72

2001) ("It is well-settled that speculation may not be used to manufacture a genuine issue of fact.").

Without evidence that the defendants were aware that House had filed a lawsuit prior to their allegedly retaliatory actions, he cannot establish that his engaging in a protected activity was a motivating factor in their conduct. Because House cannot establish an element of his retaliation claim, the defendants are entitled to judgment as a matter of law. House's motion for summary judgment on his First Amendment retaliation claim is denied and the defendants' cross-motion is granted.

   b. **Fourth Amendment Claims**

      i. **Unlawful Entry**

House alleges that the defendants entered his home without a warrant in violation of the Fourth Amendment. (ECF No. 55 at 1.) The defendants argue that the warrantless entry into the residence was justified by exigent circumstances. Specifically, the presence of an unknown person inside the home (who later turned out to be House) created a threat to the safety of the individuals who were present when police arrived. (ECF No. 59-1 at 6, 9.)

Warrantless searches are *per se* unreasonable under the Fourth Amendment, subject to certain exceptions. *United States v. Kizart*, 967 F.3d 693, 695 (7th Cir. 2020) (citing *Arizona v. Gant*, 556 U.S. 332, 338 (2009)). One exception is when there are exigent circumstances, that is, when there is a compelling need for official action and

insufficient time to secure a warrant. *Hawkins v. Mitchell*, 756 F.3d 983, 992 (7th Cir. 2014). Exigent circumstances exist when police reasonably believe that their safety or the safety of others may be threatened. *United States v. Hardy*, 52 F.3d 147, 149 (7th Cir. 1995). Whether exigent circumstances exist is to be analyzed from the perspective of the officers at the scene. *United States v. Marshall*, 157 F.3d 477, 482 (7th Cir. 1998). Accordingly, the court asks not what the police could have done but rather whether they had, at the time, a reasonable belief that there was a compelling need to act and no time to procure a search warrant. *Id.*

The undisputed facts support the conclusion that exigent circumstances authorized the officers' entry into the home. Klepel went to the home to follow up on a reported battery. He knocked on the door and no one answered, so he left. He then was told that someone from the home wanted to talk to him, so he returned. Again no one responded when he knocked on the door. Eventually a woman came out of the home and gave Klepel a fake name and could (or would) not provide her date of birth. She then told Klepel that she would have her husband come outside, but she disappeared back in the house, with neither her nor her husband coming back out. Klepel became concerned about what was going on and called for backup.

When Rasmussen arrived to assist Klepel, he saw an individual attempt to leave the home through a side door but, upon seeing the police, retreat back into the home. Klepel then repeatedly knocked on the front door until Vargas, Hernandez, Moralez,

and her child came out. Once they were outside, the defendants determined that none of them was the person Rasmussen had seen at the side door. Klepel asked them multiple times if anyone else was inside the home and was repeatedly assured that nobody else was inside except for Moralez's eight-month-old son. The officers knew that was not true. Moralez was allowed to bring her baby outside.

Klepel then shouted into the home to order the person Rasmussen had seen to come out. He received no response. At that point, the defendants reasonably concluded that an unlawful intruder was inside the home and that the four individuals standing outside were in danger. As such, the defendants were justified in entering the home to locate the unknown individual and ensure the residents' safety.

The court agrees with the defendants that it would have been unreasonable for them to have left the scene with an unknown person still inside the home. The fact that none of the residents told the officers that they were in danger does not negate what the defendants reasonably believed based on the facts known to them at the time of entry.

As such, House's motion for summary judgment on this claim is denied and the defendants' motion for summary judgment is granted. It is unnecessary to address the defendants' alternative argument that they are entitled to qualified immunity.

### ii. Unlawful Seizure

House alleges that the defendants unreasonably seized him, violating his Fourth Amendment rights. Specifically, he argues that he was arrested without probable cause.

(ECF No. 55 at 4.) The defendants respond that House was not arrested, and that he was instead subject to a lawful investigatory stop based on reasonable suspicion that he had unlawfully entered the home. (ECF No. 59-1 at 13.)

Seizures are generally reasonable within the meaning of the Fourth Amendment when police have probable cause to believe the suspect committed a crime. *Bailey v. Unites States*, 568 U.S. 186, 192 (2013) (citing *Dunaway v. New York*, 442 U.S. 200, 213 (1979)). One exception to the probable cause requirement is when police conduct a brief investigatory stop, known as a *Terry* stop. *See Terry v. Ohio*, 392 U.S. 1 (1968). To make a lawful investigatory stop, police officers need reasonable suspicion, supported by articulable facts, that criminal activity is afoot. *Terry*, 392 U.S. at 30. Reasonable suspicion is "some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity." *United States v. Jackson*, 300 F.3d 740, 745 (7th Cir. 2002) (quoting *United States v. Cortez*, 448 U.S. 411, 417 (1981)). Reasonable suspicion is determined by looking to the totality of the circumstances known to the officers at the time of the stop. *United States v. Swift*, 220 F.3d 502, 506 (7th Cir. 2000).

A proper *Terry* stop must be reasonable both in scope and duration, but officers may take reasonable steps to assure their own safety. *Terry*, 392 U.S. at 30. Moreover, "in evaluating the reasonableness of an investigative stop, we examine first whether the officers' action was justified at its inception and, second, whether it was reasonably related in scope to the circumstances which justified the interference in the first place."

13
Case 2:22-cv-00911-WED   Filed 09/28/23   Page 13 of 20   Document 72

*United States v. Smith*, 3 F.3d 1088, 1095 (7th Cir. 1993) (quoting *United States v. Glenna*, 878 F.2d 967, 971 (7th Cir. 1989)).

The court agrees with the defendants that they had reasonable suspicion to conduct a *Terry* stop of House. They had reason to believe that House had illegally intruded into the home. The defendants knew that an unidentified person had attempted to exit the home, returning inside after seeing the police. The defendants also believed that nobody else should have been inside based on the statements made by the individuals who had come outside. When House was found in the house, he was hiding in the basement.

House contends that the fact that Klepel initially came to the home to speak with him and Moralez about the battery they had reported negates any reasonable suspicion that House was unlawfully present; Klepel should have known House was lawfully present in his own home. (ECF No. 61 at 3). But in evaluating whether the defendants had reasonable suspicion, the court looks to what they knew at the time of the stop. And at the time of the stop, the defendants were unaware of House's identity—to them, he was an unknown individual evading the police somewhere inside the home. House's evasive behavior despite being in his own home only confirms that the defendants' suspicion that he had illegally entered the home was reasonable.

That said, while the court finds that the defendants initial stop of House was valid, it still must consider whether the duration and scope of the stop were reasonable

under the circumstances. "For an investigative stop based on reasonable suspicion to pass constitutional muster, the investigation following it must be reasonably related in scope and duration to the circumstances that justified the stop in the first instance so that it is a minimal intrusion on the individual's Fourth Amendment interests." *United States v. Bullock*, 632 F.3d 1004, 1015 (7th Cir. 2011) (quoting *United States v. Robinson*, 30 F.3d 774, 784 (7th Cir. 1994)). The "detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop." *Florida v. Royer*, 460 U.S. 491, 500 (1983). More specifically, a *Terry* stop violates the Constitution when an officer "prolongs the stop, absent the reasonable suspicion ordinarily demanded" by the Fourth Amendment. *United States v. Lopez*, 907 F.3d 472, 478 (7th Cir. 2018) (quoting *Rodriguez v. United States*, 575 U.S. 348, 355 (2015)). "When the reasonable suspicion justifying the stop evaporates, the stop must end." *United States v. Lopez*, 907 F.3d 472, 478 (7th Cir. 2018).

The defendants contend that House was briefly detained after he was discovered hiding in the basement. Specifically, they state that House was handcuffed and placed in a police van while they figured out who he was and whether he was lawfully present in the home, and that the stop lasted less than ten minutes. The defendants say they were prepared to release House then and there, but he requested medical assistance and was taken to the hospital.

In his complaint (ECF No. 1) and in his response to the defendants' motion for summary judgment (ECF No. 61 at 4), House asserts that he was kept in handcuffs while he was taken to the hospital and while in the emergency room. The defendants don't address this evidence in their summary judgment reply. However, they acknowledge that House was placed in handcuffs when they found him and while they questioned him in the police van (ECF No. 59-1 at 12), although they don't say when the handcuffs were removed.

The parties' conflicting narratives as to when the stop ended creates a genuine dispute of material fact as to whether the stop continued past the point at which officers' reasonable suspicion ended—that is, whether the stop was unreasonably long.

The defendants emphasize that using handcuffs during House's detention does not, in and of itself, mean that the detention exceeded the bounds of a permissible *Terry* stop. That much is true. *See United States v. Carlisle*, 614 F.3d 750, 756 (7th Cir. 2010) ("While handcuffing is not a normal part of a *Terry* stop, it does not automatically turn a *Terry* stop into an unlawful arrest."). While true, that misses the point. That using handcuffs can be part of a lawful *Terry* stop does not answer the question of whether House's detention was reasonable in duration. If House remained detained while he was being taken to the hospital and while in the emergency room—which occurred after the defendants acknowledge they no longer had a basis for detaining him—a

reasonable factfinder could find that the detention lasted longer than necessary to effectuate the purpose of the stop.

The defendants argue that, even if there was a constitutional violation, they are entitled to qualified immunity on House's illegal seizure claim. To determine whether qualified immunity applies, the court must consider "(1) whether the defendants violated a constitutional right, and (2) whether the constitutional right was clearly established." *Broadfield v. McGrath*, 737 F. App'x 773, 775 (7th Cir. 2018). Because a reasonable factfinder could conclude that the defendants violated House's Fourth Amendment rights, the only remaining question is whether the rights that the defendants may have violated were clearly established.

"For a right to be clearly established, 'existing precedent must have placed the statutory or constitutional question beyond debate.'" *Green v. Newport*, 868 F.3d 629 at 633 (7th Cir. 2017) (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015)). "The right must be 'sufficiently clear that every reasonable official would understand that what he is doing violates that right.'" *Id.* In 2019, it was clearly established that *Terry* stops based on reasonable suspicion must be reasonable in scope and duration. *Bullock*, 632 F.3d 1004 at 1015. A stop may last no longer than necessary to achieve its purpose, and "a person stopped on reasonable suspicion must be released as soon as the officers have assured themselves that no skullduggery is afoot." *Lopez*, 907 F.3d at 486 (quoting *Childs*, 277 F.3d at 952). No reasonable officer would believe that keeping an individual

detained after reasonable suspicion to stop them had ended was reasonable. The defendants are not entitled to qualified immunity.

Because a genuine dispute of material fact exists as to the duration of House's detention, the court cannot conclude as a matter of law that the defendants' conduct remained within the bounds of the Fourth Amendment. Nor can it conclude that their actions exceeded its bounds. As a result, House's motion for summary judgment on his Fourth Amendment illegal seizure claim is denied, and the defendants' cross-motion is similarly denied.

### c. Eighth Amendment Cruel and Unusual Punishment Claim

In his amended complaint, House alleges that the defendants violated his Eighth Amendment right against cruel and unusual punishment when he was transported to the hospital, stating that he was "treated inhumanely" and "was not free to go." (ECF No. 29 at 4.) House does not explicitly refer to this claim in his motion for summary judgment, although he says he is moving for summary judgment on "all claims." (ECF No. 55 at 4.) In any event, the Eighth Amendment prohibition on cruel and unusual punishment applies only to those who have been convicted of a criminal offense. *Smith v. Artison*, 779 F. Supp. 113, 115 (E.D. Wis. 1991). "[P]ersons who have not (yet) been convicted may not be 'punished' at all—cruelly, unusually, or otherwise." *Id*. at 114-15. House was not convicted and incarcerated for an offense during the events in dispute.

Therefore, his motion for summary judgment is denied and the defendants' cross-motion is granted.

### d. Punitive Damages

House also requests an award of punitive damages. (ECF No. 55 at 4.) The defendants contend that House has not pointed to anything in the record to indicate that he is entitled to punitive damages. (ECF No. 59-1 at 70.) "In an action under § 1983, 'a jury may be permitted to assess punitive damages … when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.'" *Green v. Howser*, 942 F.3d 772, 781 (7th Cir. 2019) (quoting *Smith v. Wade*, 461 U.S. 30, 56 (1983)). Given the genuine dispute of material fact regarding whether the duration of the *Terry* stop of House lasted longer than necessary to effectuate the purpose of the stop, the court cannot conclude as a matter of law that no evidence has been presented that the defendants acted with reckless or callous indifference to House's federally protected rights. As such, the defendants' motion to dismiss House's claim for punitive damages is denied.

### 5. Conclusion

For the reasons stated, House's motion for summary judgment is denied on all claims. The defendants' motion for summary judgment is granted in part and denied in part. It is granted with respect to House's First Amendment claim, his Fourth Amendment unlawful entry claim, and his Eighth Amendment claim. It is denied with

respect to House's Fourth Amendment unreasonable seizure claim and his claim for punitive damages.

**IT IS THEREFORE ORDERED** that House's motion to dismiss is **DENIED**. The defendants' motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**. It is **GRANTED** with respect to House's First Amendment claim, Fourth Amendment unreasonable search claim, and Eighth Amendment claim. It is **DENIED** with respect to House's unreasonable seizure claim and his claim for punitive damages.

Dated at Milwaukee, Wisconsin this 28th day of September, 2023.

*William E. Duffin*
WILLIAM E. DUFFIN
U.S. Magistrate Judge